# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TECHNOLOGY IN ARISCALE, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>RAZER USA, LTD.,<br><br>        Defendant. | Case No. 8:22-cv-02310-JWH-ADS<br><br>**ORDER REGARDING MOTION TO DISMISS [ECF No. 16]** |

Before the Court is the motion of Defendant Razer USA, Ltd. to dismiss the Complaint of Plaintiff Technology in Ariscale, LLC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]  The Court conducted a hearing on Razer's Motion in July 2023.  After considering the papers filed in support and in opposition,[2] as well as the argument by counsel at the hearing, the Court **GRANTS** the Motion **with leave to amend**.

# I. BACKGROUND

Ariscale filed its Complaint in December 2022, thereby commencing this action. Ariscale alleges that Razer's activities pertaining to Razer's "Wi-Fi compatible" products infringe at least Claims 1, 2, 14, and 15 of Ariscale's U.S. Patent No. 8,139,652 (the "'652 Patent"), which is entitled "Method and Apparatus for Decoding Transmission Signals in a Wireless Communication System."[3]  Razer filed the instant Motion in February 2023, seeking the dismissal of Ariscale's Complaint on the grounds that (1) Ariscale's pleading of direct infringement is deficient; and (2) the Complaint fails to state a claim for relief because the '652 Patent is directed to ineligible subject matter and is thus invalid under 35 U.S.C. § 101.

The '652 Patent generally relates to decoding transmission signals in wireless communication systems.[4]  Specifically, the '652 Patent teaches a method and apparatus for decoding information transmitted using a Frame Control Header ("FCH").[5]  A signal in a downlink[6] frame may include an FCH for transmitting frame configuration information.[7]  The configuration information, or downlink frame prefix information, is arranged at the front portion of a frame, and it includes configuration information about a corresponding frame.[8]  Accurate and efficient transmission and reception of the downlink

---

[1]    Def.'s Mot. to Dismiss (the "Motion") [ECF No. 16].

[2]    The Court considered the documents of record in this action, including the following papers:  (1) Compl. (the "Complaint") [ECF No. 1]; (2) the Motion; (3) Pl.'s Opp'n to the Motion (the "Opposition") [ECF No. 17]; and (4) Def.'s Reply in Supp. of the Motion (the "Reply") [ECF No. 20].

[3]    *See generally* Complaint.

[4]    *See* '652 Patent [ECF No. 1-1] Abstract.

[5]    *Id*. at 1:24-27 & 2:40-42.

[6]    The term "downlink" refers to signals transmitted from a satellite—*e.g.*, a cell tower—to a base station—*e.g.*, a wireless mobile phone.

[7]    *Id*. at 2:7-10.

[8]    *Id*. at 2:10-18.

frame prefix information are important to ensure the successful performance of later reception processes.[9]

The '652 Patent claims an invention that purports to improve the reception performance of an FCH by combining and decoding downlink frame prefix information repeatedly transmitted through the FCH, as opposed to relying on conventional decoding methods.[10]  It also purports to improve system performance by preventing the loss of information important for data reception.[11]  The '652 Patent further purports to improve "reception performance of corresponding information by mutually combining frame intervals including information requiring superior reception performance," as opposed to relying on conventional reception methods.[12]

The '652 Patent teaches a method for realizing the above-described improvements.  The method includes receiving the transmission signal that will be decoded.[13]  Repeated symbols, including downlink frame prefix information and interleaved encoding blocks, make up the signal.[14]  The method further includes deinterleaving the received signal.[15]  "Deinterleaving" refers to restoring a signal to its original order after the signal has been mixed by changing the ordering sequence of portions of the signal.[16]  The method further comprises mutually combining the repeated symbols in the deinterleaved signal.[17]  The method further comprises decoding the combined symbols.

Claim 1 discloses the above-described method as follows:

A computer-implemented method for decoding a transmission signal, the method comprising:

receiving, using a computer processor, the transmission signal, which is formed by repeating symbols including downlink frame prefix

---

[9]     *Id.* at 2:14-28.
[10]    *Id.* at 2:42-48.
[11]    *Id.*
[12]    *Id.* at 2:49-54.
[13]    *Id.* at 2:58-63.
[14]    *Id.*
[15]    *Id.*
[16]    *Id.* at 2:3-4.
[17]    *Id.* at 2:58-63.

information, encoding repeated symbols to form encoding blocks, and interleaving the encoding blocks;

deinterleaving, using a computer processor, the received transmission signal;

combining, using a computer processor, symbols at the same positions of deinterleaved encoding blocks among the repeated symbols in the deinterleaved transmission signal; and

decoding, using a computer processor, the combined symbols.[18]

## II.  LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint.  *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In ruling on a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."  *Am. Family Ass'n v. City & County of San Francisco*, 277 F.3d 1114, 1120 (9th Cir. 2002).  Although a complaint attacked through a Rule 12(b)(6) motion "does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions.  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ."  *Twombly*, 550 U.S. at 555 (citations and footnote omitted).  Accordingly, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," which means that a plaintiff must plead sufficient factual content to "allow[] the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  A complaint must contain "well-pleaded facts" from which the Court can "infer more than the mere possibility of misconduct."  *Id*. at 679.

Section 101 of Title 35 defines patent-eligible subject matter with reference to four independent categories of eligible inventions:  processes, machines, manufactures, and compositions of matter.  *See Bilski v. Kappos*, 561 U.S. 593, 601 (2010); 35 U.S.C. § 101. The Supreme Court recognizes three exceptions to the application of § 101:  "laws of

---

[18]      *Id*. at Claim 1.

nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 308-09 (1980). Claims directed to those exceptions are not eligible due to pre-emption concerns. *See Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014); *see also Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948).

*Alice* is the most recent statement by the Supreme Court on the application of those principles. *Alice* expanded the two-step approach for resolving § 101 issues that the Court adopted in *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77 (2012). In the first step, a court must "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice*, 573 U.S. at 217 (citing *Mayo*, 566 U.S. at 77). If this standard is satisfied, then, in the second step, the court must ask "[w]hat else is there in the claims." *Id.* That analysis requires a consideration of "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application." *Id.* (citing *Mayo*, 566 U.S. at 78–79). In performing this second step of the analysis, a court must "search for an 'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* at 217-18 (citing *Mayo*, 566 U.S. at 72–73).

The Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016).

### III. ANALYSIS

Razer moves to dismiss the Complaint on the bases that Ariscale fails to plead direct patent infringement adequately and that the '652 Patent is directed to ineligible subject matter and is thus invalid under 35 U.S.C. § 101.

### A. Violation of Conference-of-Counsel Requirement

In addition to opposing Razer's Motion on the merits, Ariscale argues that Razer violated L.R. 7-3 by failing to confer with Ariscale at least seven days before Razer filed the instant Motion.[19] The Court may deny Razer's Motion for violation of the conference-of-counsel requirement alone. *See Masimo Corp. v. Apple Inc.*, 2020 WL 5215385, at *2 (C.D. Cal. Aug. 4, 2020). However, because Ariscale had a fair opportunity to respond to Razer's arguments in its opposition brief and at the hearing, the Court exercises its discretion to entertain Razer's motion on the merits. *See Santana v.*

---

[19]      Opposition 6:6-10.

*Specialized Loan*, 2022 WL 17886019, at *3 (C.D. Cal. Nov. 2, 2022).  Razer is admonished to comply assiduously with the Local Rules, including L.R. 7-3, henceforth.

## B.    Pleading Standard

"A plaintiff is not required to plead infringement on an element-by-element basis."  *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021).  "Instead, it is enough 'that a complaint place the alleged infringer on notice of what activity . . . is being accused of infringement.'"  *Id*. (quoting *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017)); *see also Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018).  For cases involving "simple technology," identification of the accused products, inclusion of photos of the accused products, and allegations that the accused products meet all claim limitations may be sufficient to "provide fair notice of infringement."  *See Disc Disease*, 888 F.3d at 1260.

Cases involving complex technology require more detailed factual allegations to meet the notice pleading standard.  For instance, in *North Star Innovations, Inc. v. Etron Tech. Am. Inc.*, 2016 WL 9046909, at *4 (C.D. Cal. Sept. 21, 2016), a court in this district found the pleadings deficient because they did not include any factual allegations concerning the structure and operation of the accused products.  The patents at issue in *North Star Innovations* were directed to computer hardware and, specifically, to dynamic memory devices.  *Id*. at *1.  Additionally, a complaint for direct patent infringement must include an allegation that at least one accused product, or multiple accused products used conjunctively, perform each and every element of at least one asserted claim.  *See TeleSign Corp. v. Twilio, Inc.*, 2016 WL 4703873, at *3 (C.D. Cal. Aug. 3, 2016).

Here, Ariscale does not plead that any one accused product performs each and every element of any one asserted claim.  That deficiency alone warrants dismissal.  *See id.*  Additionally, Ariscale provides a list of the accused Razer products, but Ariscale does not explain the structure or operation of any of those accused products and does not explain how any accused product meets any claim limitation.[20]

In its Complaint, Ariscale describes the Institute of Electronic and Electronics Engineers 802.11ac standard (the "Wi-Fi Standard") at length, but Ariscale does not allege that the '652 Patent is a standard essential patent and does not otherwise provide factual allegations sufficient to demonstrate plausibly that the claims of the '652 Patent encompass the Wi-Fi Standard.  For those reasons, even though Ariscale plausibly alleges that the accused Razer products comply with the Wi-Fi Standard, Ariscale's pleading is deficient.  *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010).

---

[20]     Complaint ¶¶ 32 & 34.

For the foregoing reasons, the Court **GRANTS** Razer's Motion to dismiss Ariscale's claim for direct infringement.  The Court likewise **GRANTS** Razer's Motion with respect to Ariscale's indirect infringement claims because those claims depend on a plausible showing of direct infringement.

## C.    Patent Eligibility under 35 U.S.C. § 101

### 1.    *Alice/Mayo* Step One

Razer argues that Claim 1[21] of the '652 Patent is directed to the "abstract idea of decoding data that has been transmitted in an encoded form."[22]  Ariscale responds that the '652 Patent is presumptively valid, especially because it survived a § 101 rejection during prosecution and because it is directed to a novel decoding method that improves reception performance.[23]

"The first stage of the *Alice* inquiry looks at the focus of the claims [and] their character as a whole."  *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018) (quotations omitted).  Claimed processes that can be "performed in the human mind, or by a human using a pen and paper" are directed to abstract ideas.  *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011).  Here, Claim 1 is directed to a transmission signal decoding method that involves receiving the signal, deinterleaving the signal, combining the symbols forming the deinterleaved signal, and decoding the symbols.[24]  To simplify, Claim 1 appears to be directed to receiving, manipulating, and decoding data.

The Court concludes that the concept of receiving, manipulating, and decoding data is an abstract idea under § 101.  First, encoding and decoding data is an abstract idea.  *See RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (finding claims directed to the abstract idea of "encoding and decoding" data invalid); *Adaptive Streaming Inc. v. Netflix, Inc.*, 836 F. App'x 900, 903 (Fed. Cir. 2020); *see also Sensormatic Elecs., LLC v. Wyze Labs, Inc.*, 2021 WL 2944838, at *3 (Fed. Cir. July 14, 2021).  Sending, receiving, and manipulating data are likewise abstract ideas.  *See Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1261 (Fed. Cir. 2016) (finding claims directed to "the conveyance and manipulation of information using wireless

---

[21]    Razer contends that Claim 1 is representative of the other asserted claims.  Motion 8 n.1. Ariscale does not address that issue.  The Court finds Claim 1 representative of Claims 2, 14, and 15, but it declines to extend any representativeness holding to the remaining claims.  Accordingly, this ruling pertains only to Claims 1, 2, 14, and 15 of the '652 Patent.

[22]    Motion 8:5-7.

[23]    Opposition 12:1-14 & 14:11-20.

[24]    '652 Patent, Claim 1.

communication and computer technology" invalid); *see also Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017) (finding claims directed to the abstract idea of "organizing, displaying, and manipulating data" invalid); *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014) (finding a claim directed to the abstract idea of combining data invalid).

Ariscale contends that the U.S. Patent and Trademark Office (the "<u>PTO</u>") found Claim 1 valid under § 101; however, Ariscale does not provide the file history and does not discuss the substance of that decision.[25] Based upon a review of the '652 Patent file history, it appears that the Non-Final Office Action rejecting Claim 1 under § 101 primarily explained that the claims were invalid because they broadly recited a process that could be performed in the mind, given the absence of any structural limitations. The patentee traversed that rejection by amending the claims to refer explicitly to a "computer-implemented method" and to specify the use of a "computer processor."[26]

The law has changed since the application for the '652 Patent was prosecuted. Patentees can no longer escape invalidity under § 101 by specifying that generic computer components perform the claimed functions or make up the claimed apparatus. *See Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1315 (Fed. Cir. 2016) ("Claims that amount to nothing significantly more than an instruction to apply [an] abstract idea . . . using some unspecified, generic computer . . . do not make an abstract idea patent-eligible."). Moreover, the PTO decision predates the *Alice* two-step framework. Thus, the Court considers eligibility *de novo* under the modern two-step framework.

Ariscale also argues that Claim 1 is valid because it is directed to a novel decoding method that improves performance reception.[27] However, in support of that argument, Ariscale points to only the portion of the specification describing the technical field and background art and summarizing the technical problem.[28] Ariscale does not contend that the actual limitations of Claim 1, discussed above, are directed to something other than the abstract idea of decoding a signal. Rather, Ariscale concludes that the teachings of the '652 Patent depart from conventional decoding methods.[29] That argument is not persuasive with respect to Step One because the § 101 inquiry does not concern the prior

---

[25]   *See* Opposition 12:1-14.

[26]   '652 Patent, Claim 1.

[27]   Opposition 14:11-20.

[28]   *Id.*

[29]   *Id.*

art. *See Intell. Ventures I*, 838 F.3d at 1315. Rather, it concerns whether the claims are directed to patent-ineligible subject matter. *Id.*

Accordingly, for the foregoing reasons, the Court concludes that Claim 1 is directed to the abstract idea of decoding information.

### 2.    *Alice/Mayo* **Step Two**

Razer argues that Claim 1 of the '652 Patent includes only conventional and routine elements insufficient to supply an inventive concept.[30] Ariscale does not address Step Two.

The Step Two inquiry considers whether the claim includes "an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible invention." *Yu v. Apple Inc.*, 1 F.4th 1040, 1045 (Fed. Cir. 2021). "Where a claim is directed to an abstract idea, the claim must include additional features to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 773 (Fed. Cir. 2019) (citations omitted). In evaluating Step Two, the Court considers whether the claim limitations, either individually or as an ordered combination, teach implementing the abstract idea using something more than well-understood, routine, or conventional techniques. *See Coop. Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 130 (Fed. Cir. 2022).

Here, Claim 1 recites that the transmission signal is "formed by repeating symbols including downlink frame prefix information."[31] While the downlink frame prefix information is merely data, it is a specific type of data that performs a specific and important purpose with the wireless communication context.[32] The '652 Patent explains that "a conventional signal transmission/reception scheme has not provided a separate reception performance improvement scheme for the DL_Frame_Prefix information transmitted through the FCH."[33] Thus, the Court must consider whether the specific inclusion of the "downlink frame prefix information" constitutes an inventive concept. Claim 1 could, potentially, recite an inventive concept to the extent that it teaches a separate decoding of the downlink frame prefix information and to the extent that a specific focus on the downlink frame prefix information is unconventional.

---

[30]    Motion 13:16-20.

[31]    '652 Patent, Claim 1.

[32]    *See* § II, *supra*.

[33]    '652 Patent 2:22-25.

Determining whether a claim is directed to an abstract idea (Step One) is a question of law, but determining whether claim limitations refer to well understood, routine, and conventional material (relevant to Step Two) may present a fact issue.  *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).  A complaint that properly alleges that individual elements of a claim are not well-understood, routine, or conventional may be sufficient to state a claim notwithstanding an invalidity challenge under § 101.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018).

Here, Ariscale does not include in its Complaint specific factual allegations that the inclusion of the downlink frame prefix information is unconventional.  Rather, Ariscale concludes generally that "the claims comprise ordered combinations of features and functions that, at the time of the invention, were not, alone or in combination, well-understood, routine, or conventional."[34]  The Court need not accept such a conclusion as true.  *See Twombly*, 550 U.S. at 555.  Accordingly, Ariscale's Complaint does not presently include any facts that would plausibly support a finding of an inventive concept in Claim 1.  Therefore, the Court **DISMISSES** the Complaint.  However, because neither party addresses this issue in detail, the Court is not certain that no factual allegations could cure this defect.  The Court **GRANTS** leave to amend.

## IV.  DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.      Razer's Motion is **GRANTED**.  Ariscale's Complaint is **DISMISSED with leave to amend**.

2.      Ariscale is **DIRECTED** to file an amended pleading, if at all, no later than December 15, 2023.  If Ariscale chooses to file an amended pleading, then it is also **DIRECTED** to file contemporaneously therewith a Notice of Revisions to Complaint that provides the Court with a redline version that shows the amendments.  If Ariscale fails to file its amended pleading by December 15, 2023, then the Court will **DISMISS** Ariscale's Complaint **with prejudice**.

---

[34]      Complaint ¶ 13.

3.      If Ariscale files an amended pleading by December 15, 2023, then Razer is **DIRECTED** to file its response by January 5, 2024.

      **IT IS SO ORDERED.**

Dated:  November 27, 2023                                 

John W. Holcomb
UNITED STATES DISTRICT JUDGE